IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| EXECUTIVE WINGS, INC., | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:13-cv-00523 |
| v. | ) | |
| | ) | |
| ROBERT DOLBY and AVIATION ADVISORS INT'L, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, United States District Judge**

This case is about a deal to buy a multi-million-dollar corporate jet. According to Plaintiff, Executive Wings, Inc. ("EWI"), Defendants cheated it by taking a "secret" profit on top of the agreed-upon commission, and colluded with a third party to deprive it of the benefit of a heretofore-undiscovered direct contract with the jet's seller and to conceal the less-desirable progressive payment feature of the jet's engine warranty. Defendants contend that they engaged in an unremarkable, "back-to-back" transaction that is common to the airplane sales industry. Plaintiff has moved for summary judgment. Because numerous genuine disputes of material fact remain, Plaintiff's motion will be denied.

### I. BACKGROUND

#### A. Facts

The following material facts are undisputed[1] unless otherwise noted.

---

[1] The facts are taken from the evidence of record that is either undisputed as indicated by the parties, or not fairly disputed on the record. Disputed facts are viewed in the light most favorable to the nonmoving party in accordance with *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, neither party complied with the local rule requirements to file a Concise Statement of Material Facts. *See* Local Rule 56.1A(1); Order on Motion Practice, at ECF No. 5, at 1 (directing the parties to follow the Court's local rules). The Court will treat the factual statements included in each party's respective brief as their statements of material facts. Both parties' statements refer

EWI owns and operates various aircraft. (First Amended Complaint, ECF No. 100 ("FAC"), ¶ 8.) Frank Zokaites is EWI's President. (*Id.* at 20.) In late 2012, EWI wanted to purchase a late-model used jet plane. (*Id.* ¶ 8.) EWI found an internet advertisement from Defendant Aviation Advisers Int'l, Inc. ("Aviation"), who had listed an airplane of interest for sale. (*Id.*) EWI called Aviation, and Aviation represented itself as specializing in locating planes for clients and acting as brokers for the purchase of those planes. (*Id.*) Defendant Robert Dolby is an officer, director, and shareholder of Aviation. (*Id.* ¶ 3.) EWI told Aviation it was interested in purchasing a late-model jet airplane with low engine hours for no more than $2.4 million. (*Id.* ¶ 9.)

The nature of the relationship between Aviation and EWI is disputed. EWI avers that Aviation told EWI it would act as EWI's broker or agent, and EWI agreed to this arrangement. (*Id.* ¶¶ 11–12.) Aviation only admits that EWI and Aviation discussed the possibility of Aviation locating and selling EWI a plane other than the one that initially caught EWI's interest. (Answer and Affirmative Defenses of Defs., ECF No. 103 ("Answer"), ¶¶ 10–13.)

The relationship between Defendant and Alf Kuenzl is similarly disputed. Plaintiff alleges that Kuenzl individually and through his company, Top-A-Services ("TAS"), Ltd. (collectively, "Kuenzl"), acted as an agent or joint venturer with Defendants, under Defendants' direction, authorization, and control. (FAC, ¶ 14.) Defendants deny this allegation. (Answer, ¶ 14)

In December 2012, Robert Dolby, Aviation, and Kuenzl located an airplane ("the Plane") that met Plaintiff's specifications. (FAC, ¶ 16.) They informed Plaintiff that it was a 2008 Hawker Beechcraft, located in Berlin, Germany, with a fully paid Total Assurance Program Elite

---

exclusively to the First Amended Complaint, the Answer, and various exhibits attached to their filings on the summary judgment motion.

("TAP Elite") engine warranty from the engine manufacturer, Williams International, LLC. (*Id.*) The Plane was owned by Bank of Utah as trustee for Sinai Air, LLC. (*Id.* ¶ 17.)

On December 12, 2012, Kuenzl made an offer directly to Sinai to purchase the Plane for $2.3 million ("EWI-Sinai Agreement"). (*Id.* ¶ 18; Exhibit A, ECF No. 100–1 (Airline Purchase Offer submitted from TAS to Aradian Aviation Company).) He signed the agreement "on behalf of our client, Executive Wings Inc," by "Alf Kuenzl, TAS . . . Agent for Executive Wings" (Exhibit A, ECF No. 100–1, at 3.) The next day, Sinai executed the offer. (*Id.*) The EWI-Sinai agreement provided that the "current TAP ELITE coverage will be paid up and transferred at closing." (*Id.* at 2.) The EWI-Sinai Agreement also required Plaintiff to make a refundable $50,000 deposit to Aero-Space Reports, and noted that EWI had previously wired the deposit money. (*Id.* at 3.)

Plaintiff avers that it was never made aware of the EWI-Sinai Agreement, despite being one of the Agreement's putative parties. (FAC, ¶ 21.) Plaintiff alleges it only learned of the EWI-Sinai Agreement in May of 2016, during discovery in this case. (*Id.*) Defendants aver that Plaintiff was not a party to the EWI-Sinai Agreement, but that before closing, Defendant disclosed the Agreement's existence to EWI. (Amended Memo. of Law in Opposition to Pl.'s Motion for Summary Judgment, ECF No. 171 ("Defs.' Br."), at 3.) Defendant further avers that Kuenzl entered the EWI-Sinai Agreement to "secure the airplane to be able to sell it to" Plaintiff. (Tr. of Dep. of Robert Dolby, ECF No. 162–3 ("Dolby Dep."), at 116–17.) Defendant claims that it intended to engage in a "back-to-back" transaction, commonplace to the airplane sales industry, to generate its standard rate commission. (*Id.* at 101 & 113.)

On December 13, 2012, Plaintiff, unaware of the EWI-Sinai Agreement, made an offer to purchase the Plane from *Aviation* for $2.425 million. (FAC ¶ 23.) Defendants then sent an

3

agreement to purchase the Plane ("Aviation-EWI Contract"), which Plaintiff and Aviation signed. (FAC, ¶ 24.) The Aviation-EWI Contract provided that the "current TAP ELITE coverage will be paid up and transferred at closing." (Exh. B, ECF No. 100–2.) Plaintiff questioned how Aviation could sell an airplane it did not own, and Aviation revealed its purchase of the Plane from Sinai Air. (FAC, ¶ 26.) Plaintiff, believing that Defendants may have marked up the Plane's purchase price, demanded the copy of Defendants' contract with Sinai. (*Id.* ¶ 27.) Plaintiff also said it wanted its agreement to be directly between EWI and Sinai Air, without Aviation acing as a middle-man. (*Id.* ¶ 28.) In response, Aviation said it expected Plaintiff to fulfill its end of the bargain. (Answer, ¶ 28.)

On January 3, 2013, Sinai entered into an agreement ("Sinai-Aviation Contract") with Defendants to sell the Plane for $2.3 million. (FAC ¶ 30.) Plaintiff continued to request a copy of the Agreement from Defendants. (*Id.* ¶ 31.) Defendants claim that the Sinai-Aviation Contract actually arose from Kuenzl assigning his rights under the EWI-Sinai Agreement to Aviation, and that he did so to avoid potential customs problems in Germany if Kuenzl were listed as the buyer. (Defs.' Br., at 4.) Dolby emailed Kuenzl the following, which was accidentally forwarded to Aviation: "Guys-I don't like this but he has been pushing this [obtaining a copy of the Sinai-Aviation Contract] for weeks. Obviously, I will blank out the price if I do that, but I prefer not to provide it. Any ideas, confidentiality, etc that you can raise?" (FAC, ¶ 32.)

On January 22, 2013, Aviation sent Plaintiff the requested copy of the Sinai-Aviation Contract, but redacted the purchase price in the body of the Contract. (*Id.*) On another page, however, the purchase price appeared as $2,300,000. (*Id.*) The next day, Frank Zokaites emailed Defendants and Kuenzl, stating he was terminating the transaction. (FAC ¶ 34.) Kuenzl then emailed Dolby:

4

> Should I tell him the truth that TAS [Kuenzl's company] had the initially aircraft and offered to you for $2,360,000 plus 5000 inspection/handling cost (2 trips to Berlin etc) and TAS is getting also 60,000 on top with a discrete subcommission payable to Wolfgang who gave me a tip, so you consequently offered it to Frank [Zokaites] in good faith and trust for $2,425,000...Or what story do we sell him.

(*Id.* (second alteration in original).)

By this time, Plaintiff had had the Plane preliminarily inspected, and the $50,000 deposit became non-refundable under the EWI-Sinai Agreement. (FAC, ¶ 39.) Before closing, Plaintiff told Defendant it would not pay a markup or "secret fee." (*Id.*) It is disputed whether Plaintiff tried to cut Defendant out of the deal and deal directly with Sinai. (Defs.' Br., at 4.) Defendant told Plaintiff that if it did not close on the purchase, Plaintiff would lose the $50,000 deposit and face a lawsuit. (FAC, ¶ 39.) Plaintiff told Dolby that Plaintiff would travel to Germany to close on the Plane, but under protest. (*Id.*) At closing on January 28, 2013, Plaintiff purchased the Plane from Aviation under the Aviation-EWI Agreement for $2.425 million. (*Id.* ¶ 41.)[2]

Defendants told Plaintiff that Plaintiff would be receiving a fully paid up TAP Elite engine warranty. (*Id.* ¶ 42.) It is disputed whether the parties discussed the payment schedule applicable to the warranty on the plane. (Defs.' Br., at 4.) After closing, Plaintiff received additional documents necessary to have the TAP Elite warranty assigned to it. (FAC ¶ 44.) One such document revealed that the TAP Elite warranty had a progressive payment schedule. (*Id.* ¶ 45.) Both the TAP Elite warranty with the standard schedule and the one with the progressive schedule offer the same coverage and benefits, but the standard payment plan has a fixed hourly payment over the life of the engine, where the progressive payment plan has a low initial payment schedule that progressively increase over time to yield the same return to Williams International over the life of the engine. (*Id.* ¶ 46.) The warranty's progressive feature required

---

[2] Intriguingly, Defendant did not move for summary judgment on the basis that the Plaintiff had, in fact, actually purchased the exact airplane that it wanted, for exactly the price it agreed to pay.

5

Plaintiff to pay an additional $108,783 on the warranty. (*Id.*) The parties appear to dispute whether the TAP Elite warranty with a progressive schedule is a separate product, not to be referred to as a fully paid up TAP Elite warranty, but rather as something else entirely—"TAP Elite Progressive." (*Id.* ¶ 47; Answer, ¶ 47.) The parties further dispute whether Plaintiff was made aware of the progressive status of the warranty, and whether Defendant knew the warranty had a progressive payment schedule. (FAC, ¶ 47.)

### B. Procedural History

Plaintiff filed suit, seeking damages in the amount of $233,783.00 for the difference between what it paid Aviation for the Plane and what Aviation paid Sinai for the Plane, as well as the expense of changing the warranty to a standard payment schedule. (Notice of Removal, Complaint, ECF No. 1–2.) EWI alleged claims for breach of fiduciary duty, fraud, and breach of contract. (*Id.*) The Court granted in part and denied in part Defendants' Motion to Dismiss at ECF No. 6, dismissing EWI's claims for fraud and breach of fiduciary duty based on either the Economic Loss Doctrine or the Gist of the Action Doctrine, and dismissing Dolby as a Defendant. (Opinion, ECF No. 44; Order, ECF No. 45.) Plaintiff then filed a Motion to Amend Complaint, alleging newly discovered claims against Dolby and Aviation. (Motion to Amend/Correct Complaint, ECF No. 83.) The Court granted Plaintiff's Motion to Amend, noting that "there are sufficient factual issues in what is sought to be pled that [the Court] should not conclude that such claims are without possible merit at this point." (Order, ECF No. 97.)

Plaintiff moved for summary judgment, ECF No. 162, and Defendants opposed the motion, ECF No. 167. The matter is now ripe for disposition.

### II. STANDARD ON SUMMARY JUDGMENT

Summary judgment is appropriate when "there is no genuine dispute as to any material

6

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The parties must support their position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*," or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (quoting Fed. R. Civ. P. 56(a) & (e)). To meet its burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party "must present affirmative evidence in order to defeat a properly supported motion" and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). Moreover, a party's labelling or characterizing a fact as "disputed" does not make it so—the record evidence the opposing party points to must support the dispute of fact, whether through reasonable inference or otherwise. If the non-moving party's evidence merely is colorable or lacks sufficient probative force, summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 249–50 (1986).

In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. *See id.* at 250. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587; *Huston v.*

7

*Procter & Gamble Paper Prods. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009).

In reviewing the record evidence, the court draws all reasonable inferences in favor of the non-moving party. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. *See Anderson,* 477 U.S. at 255; *Marino v. Indus. Crating Co.,* 358 F.3d 241, 247 (3d Cir. 2004). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 247–48. "Where the defendant is the moving party, the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to his case." *See Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 589 (3d Cir. 2005) (citing *Celotex Corp.,* 477 U.S. at 323–24).

### III. DISCUSSION

Plaintiff avers that it is entitled to summary judgment in its favor because no material issues of fact remain as to the claims in its First Amended Complaint: Count I, intentional interference with contractual relations; Count II, intentional interference with business relations; Count III, fraud; Count IV, civil conspiracy; Count V, breach of fiduciary duty; and Count VI, breach of contract. It does not request summary judgment on Count VII of the FAC (piercing the corporate veil), probably because the Court in denying in part Plaintiff's Motion to Amend noted that "it is likely that the proposed Count VII is not a separate claim at all." (Order, ECF No. 97.) Defendants argue that the relationship between Defendants, Kuenzl, and EWI is disputed, that the validity of the EWI-Sinai Agreement is disputed, and that material disputes remain as to whether the EWI-Aviation Agreement was breached. For the following reasons, the Court concludes that numerous issues of material fact remain, and therefore Plaintiff's Motion for

8

Summary Judgment will be denied.

A. **Alf Kuenzl's status**

Counts I–V of the FAC (whatever their chances of surviving the gist of the action or economic loss doctrines) all depend in some way on whether Kuenzl was an agent for EWI, or Defendants, or both.[3] The nature of Alf Kuenzl's relationship with Defendants and EWI is, at minimum, unclear. Plaintiff contends that Kuenzl was an agent for Aviation, but also an agent of EWI, and therefore he could properly enter into the EWI-Sinai Agreement on EWI's behalf.[4] Of course, if Kuenzl was not an agent for EWI, then the EWI-Sinai Agreement is invalid in the first instance.

The nature of the relationship between Kuenzl and EWI is a question of fact. *See B&L Asphalt Indus., Inc. v. Fusco*, 753 A.2d 264, 269 (Pa. Super. Ct. 2000) ("The existence of an agency relationship is a question of fact."). In seeking to establish an agency relationship, "the burden of showing authority so to act lies on the person who avails himself of such acts in order to charge a third person as principal . . . . Agency will not be assumed from the mere fact that one does an act for another. The fact of agency must be established." *Reifsnyder v. Dougherty*, 152 A. 98, 100 (1930). "[T]he three basic elements of agency are: 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the

---

[3] As to Counts I and II, alleging tortious interference, and Count IV, alleging civil conspiracy, the existence of a business relationship between EWI and Sinai depends on whether Kuenzl was EWI's agent in executing the EWI-Sinai Agreement. These claims also rely on allegations of third-party interference. If Kuenzl was *Defendants'* agent, he is not a third party. As to Count III, alleging fraud, if Kuenzl was EWI's agent in executing the EWI-Sinai Agreement, EWI could not have reasonably relied upon Defendants' alleged misrepresentation—a failure to disclose the EWI-Sinai Agreement—because it would have already known of the Agreement. As to Count V, alleging breach of fiduciary duty, if Kuenzl was EWI's agent in executing the EWI-Sinai Agreement, then Plaintiff cannot support its averment that Defendants breached their fiduciary duties of honesty in failing to disclose the EWI-Sinai Agreement, because Plaintiff would have already known about the Agreement.

[4] If Kuenzl was EWI's agent, and the Agreement was therefore a valid contract, then the statute of limitations for EWI's contract and tort claims arising from this Agreement, entered into in 2012, may bar the new claims in the FAC, filed in 2016, *see* 42 Pa. Cons. Stat. §§ 5524(7) & 5525. Although the Court raised this issue in its Order at ECF No. 97, the parties have not briefed whether these claims "relate back," and so the Court does not make any ruling on the applicable statute of limitations.

9

understanding of the parties that the principal is to be in control of the undertaking.'" *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (2000) (quoting *Scott v. Purcell*, 415 A.2d 56, 60 (1980)). "[A]gency results only if there is an agreement for the creation of a fiduciary relationship with control by the beneficiary." *Id.* (quoting *Smalich v. Westfall*, 269 A.2d 476, 480 (1970)).

Plaintiff's Motion for Summary Judgment cannot be granted because there remain genuine disputes of material fact regarding whether Kuenzl had an agency relationship with EWI. For starters, Kuenzl has not even been deposed. Beyond that, viewing the facts in the light most favorable to Defendants, Plaintiff has not established that a formal relationship between Kuenzl and either Defendants or EWI existed. First, as to Kuenzl's relationship with EWI, EWI has put forth no facts, other than the fact that Kuenzl offered to purchase the Plane from Sinai and signed the EWI-Sinai Agreement purportedly on behalf of EWI, to establish beyond dispute that Kuenzl was EWI's agent. (Pl.'s Br., at 10.) Nor has Plaintiff established that it was aware, or had imputed knowledge, that Kuenzl had entered into the EWI-Sinai Agreement on its behalf. Perhaps in an effort to avoid a time bar, EWI avers that it was not aware of the Agreement's existence until it was disclosed in discovery. (*Id.* at 9.)

In addition, regarding the EWI-Sinai Agreement, Kuenzl stated in an email to EWI that "[i]t was only TAS and myself, who tied it up, pre-negotiated the purchase price with [Sinai], retriev[e]d all logs and logistics, and offered the final package and signed [Purchase] Offer Agreement with [Sinai], to Bob Dolby/AAI, who said he has a serious buyer." (ECF No. 162–3, at 232.) Kuenzl also emailed Dolby and Sinai that "TAS Ltd assigns the signed Purchase offer and rights to AAI Inc. . . . due to expected customs problems in Germany for TAS if [TAS is the] the buyer." (ECF No. 162–3, at 154.) These statements further call into question whether Kuenzl was working for EWI (as opposed to for himself or for Defendants), and therefore whether EWI

could have been a party to the Agreement at all.

Second, as to Kuenzl's relationship with Defendants, although Kuenzl referred to Dolby as "my partner" in emails, and signed emails with "in joint venture with AAI/Bob Dolby," Dolby testified that Kuenzl was merely part of his "network" and that he had a relationship with Kuenzl that was "customary" for the aircraft industry. (Dolby Dep., at 103.) Kuenzl also remarked in one of his emails on his lack of mastery of the English language and American business law. (*See* ECF No. 162–3, at 234.) These facts lead to a reasonable inference that even if he did refer to Dolby as "my partner" in his emails, that establishes, at most, Kuenzl's personal view of his relationship with Dolby. Pennsylvania partnership law requires more than that, including clear, mutual assent by the purported partners to form a partnership. *See Zuback v. Bakmaz*, 29 A.2d 473, 474 (Pa. 1943). And regarding any alleged agency relationship, Plaintiff has not put forth undisputed facts to support a finding that Dolby intended for Kuenzl to act for him, that Kuenzl accepted this undertaking, and that they understood that Dolby was in control.

As to the claims depending on this factual issue, the Pennsylvania state torts for intentional interference (on which Counts I and II are based) require that the tortfeasor interfere with a third party's behavior with another contracting party. *See Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198 (1979). If Kuenzl acted as EWI's agent, then he could not also be a third party interfering with EWI's Agreement with Sinai. Additionally, as discussed below, Counts I–V rely on whether the EWI-Sinai Agreement was enforceable, which in turn depends on whether Kuenzl was EWI's agent in that purported contract.

### B. The validity of the EWI-Sinai Agreement

The viability of Counts I–V of the Complaint depends on whether the EWI-Sinai

Agreement was a valid, enforceable contract.[5] As explained above, this depends on the disputed factual issue of whether Kuenzl was an agent for EWI. But the "misrepresentation" at the heart of Plaintiff's claims is that Defendants said EWI had to enter into a contract with Defendants to secure the Plane, and that Defendants never disclosed the EWI-Sinai Agreement to it. (FAC ¶ 72–73.) If EWI was a proper party to the EWI-Sinai Agreement (due to Kuenzl's actions as their purported agent), then it cannot reasonably claim reliance on a representation that it had to contract with Defendants to buy the Plane.

What is more, even if Kuenzl were EWI's agent, that theory does not comport with EWI's insistence that it was unaware of the EWI-Sinai Agreement until it was disclosed in discovery, based on the bedrock principle of agency law that notice to agent is notice to principal and vice-versa. *See, e.g., In re Distilled Spirits*, 78 U.S. 356, 366 (1870).

Viewing the undisputed facts in the manner most favorable to the non-movant (here, Defendants), the Court cannot conclusively conclude that Kuenzl was an agent for EWI, and therefore cannot grant summary judgment in Plaintiff's favor on any claims based on the validity of the EWI-Sinai Agreement.

C. **Whether Dolby was Plaintiff's agent**

EWI's claim for breach of fiduciary duty, at Count V, depends on whether Dolby acted as an agent for EWI. Dolby denied in his deposition that he was Plaintiff's agent, instead saying "I was a broker offering [Zokaites] airplanes in the hope he would buy one." (Dolby Dep., at 112.) He also described himself as a "transition agent," akin to a real estate agent. (*Id.* at 113, 167.)

Again, agency is a question of fact. At this juncture, the Court cannot conclude that Dolby was or was not an agent, and thus whether he owed EWI a fiduciary duty, because disputed facts remain as to the scope of Dolby's relationship with EWI. The Court therefore

---

[5] *See supra* n.3.

cannot award summary judgment to Plaintiff on Count V, breach of fiduciary duty.

### D. The TAP Elite warranty

EWI also seeks summary judgment as to Count VI, which asserts a claim for breach of contract. EWI avers that the Aviation-EWI Contract required Aviation to transfer a fully paid TAP Elite engine warranty to EWI, and that it was deprived the benefit of its bargain because the transferred warranty had a progressive payment structure. The elements of a breach of contract claim are "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resulting damages." *Williams v. Nationwide Mut. Ins. Co.*, 750 A.2d 881, 884 (Pa. Super. Ct. 2000) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super. Ct. 1999)).

The Contract does indeed provide that "the current TAP ELITE coverage will be paid up and transferred at closing." (ECF No. 162-3, at 28.) And Dolby admitted in his deposition that upon review of that section of the Contract, his reaction upon receiving a Progressive warranty instead would be that "[i]t looks like I contracted for something I didn't get." (Dolby Dep., at 121.) EWI, seizing on this, alleges that it is beyond doubt that the TAP Elite Warranty with a progressive feature is not what the Contract contemplated, and that it was damaged to the tune of $108,782.62 when it had to convert the warranty to the standard payment feature. In response, Defendants point to the deposition of Williams International's designated representative, in which the representative explained that the coverage under both types of warranties (both referred to as the Elite warranty) is identical, and that only the payment schedule differs.

Plaintiff has not met its burden to show that, indisputably, it did not receive a "fully paid"[6] TAP Elite warranty (as contemplated by the Contract) at closing. In particular, it has not

---

[6] The Court notes that "fully paid" in this context does not appear to refer to the entire warranty being paid off, such that no future payments would be made, because even the warranty without the progressive payment schedule

13

established that the payment schedule of the warranty dictates whether it is "TAP Elite" or not. And Aviation has presented facts that a warranty with either schedule would still be considered "TAP Elite." For instance, Williams International's designated representative explained that "progressive refers to payment for the program" and characterized the payment structure as an "option" or a "feature" of the warranty, rather than describing a separate maintenance program entirely. (Dep. Tr. of Steven M. Shettler, Designated Rep. of Williams Int'l Inc, ECF 162–3, ("Williams Dep."), at 246.) He further stated that "[t]hose two programs are the same. . . . the coverage and so forth of the program [is] identical." (*Id.*)

Nor has EWI established that no material disputes remain as to Defendants' alleged duty to inform EWI of the applicable payment schedule, or whether Defendants were aware of the progressive payment schedule before closing. Dolby did receive an email with an attachment containing the progressive amendment, but he testified in his deposition that at the time of the email EWI had communicated to him that he was off the deal, and that he was no longer involved in the transaction. (Dolby Dep., at 109–10.) Whether Dolby or Aviation was in a position to tell EWI about the progressive feature will depend, in part, on a credibility determination as to Dolby's testimony that only the factfinder can make. Genuine issues of material fact remain as to whether Aviation owed a duty to transfer a standard warranty, or to inform EWI of the progressive feature.

Without more, the Court cannot conclude that the TAP Elite warranty with a progressive feature is a substantively different warranty than that contemplated by the Agreement, or that Aviation was aware of the differing payment schedule, and therefore cannot grant summary judgment in EWI's favor.

---

requires "a fixed hourly payment over the life of the engine." (FAC ¶ 46.) Rather, it appears that "fully paid" means current in the payment schedule, as contemplated by the Contract's requirement that "the *current* TAP ELITE coverage will be *paid up* and transferred at closing." (ECF No. 162–3, at 28 (emphasis added).)

## IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgment will be denied.

An appropriate Order will follow.

*[signature]*

Mark R. Hornak
United States District Judge

Dated: February 7, 2019

cc: All counsel of record